UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 MAY -2 P 1: 11

U.S. DISTRICT COURT
DISTRICT OF MASS

UNITED STATES OF AMERICA

v.

CALVIN PARKER,
          Defendant.

~~CRIMINAL NO.~~
~~98-10185-NG~~

05cv10894

MOTION TO AMEND ADDITIONAL GROUNDS TO 28 U.S.C.
§2255 MOTION, THAT COURT PROVIDED ON MARCH 22, 2005

The defendant states his Fifth, Sixth Amendment to the United States Constitution was violated, by the U.S. Government during sentencing procedures on the grounds of " Plain Error " of a unconstitutional guideline system that prohibited all judges and a defendant from utilizing a departure under section 5K2.13, Diminished Capacity, which effected the fairness that has been long-time established in judicial proceedings. The P.S.I. records show at the time of the defendant's arrest on June 6, 1998 by the U.S. Federal Government, the defendant was under a court order instructed by the Dorchester District Court Judge Margret Zaleski to under-go a (18) month mental health evaluation and to obtain medication to aid the defendant's impaired behavior that the judge discovered during trial.

The defendant states reasons for claim:

1.) On or about August of 2000 the defendant filed a motion to withdraw from counsel John Cohen, and had a hearing in front of the Honorable District Court Judge Nancy Gertner and was granted

(1)

permission.(During that hearing the defendant argued and set forth statements on the record requesting departures like other defendants under the career offender statute, and further stated the guidelines were unfair because a person like Steven Flemming could admit to killing (20) twenty people under the guidelines and recieve (7) months for each murder and obtain 11 ½ hale years senntence under section 5K1.1, but the defendant was prohibided from his departure under section 5K2.13 for his first drug offense.)

Then a month later the Honorable Judge Nancy Gertner furnished a memorandum stating that the guidelines are unfair because alot of lower level street dealers are recieving more time then the drug suppliers, under a enhanced career offender guideline which mechanically sets forth harsh time for all defendants.

2.) Then at the defendant's sentencing hearing in September of 2001, the Honorable District Court Judge Nancy Gertner stated that she dose not believe that the law allows her to depart in this case..., and post-poned the defendant's sentencing to see if their was something she could do and ordered the defendant to under-go a mental health evaluation.

Then at the defendant's final sentencing hearing on February 4, 2002 the U.S. Government stated to the defendant and judge if the court was inclined to depart section 4B1.1 career offender prohibided departure , putting the defendant and the judge in a stright jacket under the guideline system

(2)

that strips the judge from using her fundamental discretion.

The defendant relies on <u>UNITED STATES v. OLANO</u>, 507 U.S. 725 (1993) for Plain Error, and <u>UNITED STATES v. ANTONAKOPOULOS</u>, No. 03-1384, 2005 WL 407365, at * 12 - * 13 (1st Cir. Feb. 22, 2005). The defendant also attaches <u>Case No. 03-2219</u>, <u>UNITED STATES v. DAVID MACKINNON, A/K/A OVID,</u> March 16, 2005., to support his grounds which has been remanded. The defendant has already filed a motion requesting that all transcribed transcripts of the withdrawal of counsel hearing, and both sentencing hearings to be added as evidence in this matter.

The defendant Calvin Parker has already set forth grounds that the prior conviction on August 13, 1996 in Cambridge District Court for Assault & Battery and Breaking & Entering, that the United States Government obtained and used to establish the career offender provision at U.S.S.G. § 4B1.1 was rendered in error of the defendant's (5) Fifth and (6) Sixth Amendment Rights to the United States Constitution, because the government used a police complaint and a police investigation report to determine a violent crime, which has already been determine inadequate under the supreme court decision in <u>Taylor v. UNITED STATES,</u> 495 U.S. 575 (1990) and the defendant relies on <u>Shepard v. UNITED STATES,</u> no.03-9168 (United States, March 7, 2005. The defendant attached a copy of the police report and the criminal complaint filed by Burke, Brenda A, filed on July 3, 1996 charging assult and Battery, Breaking and Entering. The conviction and charge that the government used to enhance defendant,s sentance under 4B1.1

(3)

cannot stand because Annie Ruth Spencer did not file a criminal complaint and her name is not listed in criminal docket # 9652Cr002257 that the government used to determine a violent crime for career offender provision.

Under these circumstances of irregularity of error to the defendant's fundamental rights to Due Process, the defendant has sustained any burden he may h ave to show that his conviction was entered in plain error to the defendant's fifth, and sixth ammendments to the United States Constitution.

Date: 4/27 , 2005.

Respectfully submitted,

*Calvin Parker*

Calvin Parker 22157-038
USP Lewisburg
PO. Box 1000
Lewisburg PA, 17837

(4)

JAMES D. NELSON, M.D.
Diplomate of the American Board of Psychiatry and Neurology
737 West Allens Lane
Philadelphia, PA 19119
(215) 242-8055
Fax (215) 242-0305

FILED
CLERKS OFFICE
2005 MAY -2 P 1: 11
DISTRICT COURT
DISTRICT OF MASS

October 23, 2001

Dr. Gary Reynolds
Federal Detention Center
700 Arch Street
Philadelphia, PA 19105

RE:       CALVIN PARKER
INMATE # 22157-038
D/EXAM   10/22/01

Dear Dr. Reynolds:

At your request I examined the above captioned inmate in my office on 10/22/01. The following is the report of neurological and psychiatric examination.

**IDENTIFICATION** - Calvin Parker is a thirty two year old right handed inmate in the Federal Detention Center in Philadelphia, PA. He is unmarried and a father of two children whom he sired while living with the unwed mother.

**PAST HISTORY** - He was born in Montgomery, Alabama into a single parent home. He never knew his biological father. He has one brother and two sisters and is the oldest of the --four siblings. His mother a switchboard operator took him to Boston, Massachusetts when he was 5 years old. He was enrolled into the local public school when he was quickly found to be retarded. He was also a stutterer. He was also a behavioral problem. Early on he was placed into a special class and he remained in special classes until he dropped out of school in his mid teens. He tells me that since age 11 he has been under the care of a psychiatrist off and on and that he has been prescribed Risperdal (anti psychotic medication) and Prozac (anti depressant medication) for nervousness and depression.

I should note that 2 of his siblings were also placed in special classes, and at age 11, he was diagnosed Attention Deficit Hyperactivity Disorder. These 2 factors point to a genetic basis for his poor educational, vocational and social adjustments rather that economic and cultural deprivation. After leaving school he worked as an unskilled laborer in his uncles construction company. He also worked as a "prep cook" at Boston

RE: PARKER, CALVIN
Dr. Gary Reynolds
October 23, 2001
Page 3

The psychiatric examination reveals the following significant findings. His affect is somewhat dull and flat. He does not converse spontaneously. He is slow in responding to my questions, some of which have to be repeated as if he has had some difficulty understanding what I am asking. When he does respond he responds slowly, obviously having difficulty organizing and verbalizing his thoughts. There is evidence of impairment in cognitive functions including language functions, attentiveness, concentration, immediate memory, abstract thinking. He also has problems with frustration tolerance and impulse control. At times he does tend to compulsively ruminate. His frustration tolerance is low, his impulse control poor, his insight and judgment faulty and he is often anxious and depressed.

**IMPRESSION** - 1) Anti Social Personality - Manifested by Anti Social and Irresponsible Behavior beginning at age 15. Example: He never married the mother of his 2 children and I doubt if he ever supported his 2 children. He has been convicted of stealing from people, beating up people, selling drugs. 2) Minimal Diffuse Cerebral Dysfunction - Caused by Genetic Problems and Manifested by Learning Disabilities and Attention Deficit Hyperactivity Disorder - Aggravated by 3) Closed Head Injury with Cerebral Concussion Complicated by Post Concussion Syndrome with Resulting Post Traumatic Headaches, Post Traumatic Cognitive Disorder and Aggravating Pre-existing Nervousness, Hyperirritability, Low Frustration Tolerance and Poor Impulse Control. 4) Cocaine Abuse.

**RECOMMENDATIONS** - Continued Risperdal and Prozac. For headaches I would first try Midrin and Fioricet.

**PROGNOSIS** - Prognosis for controlling headaches is good. Prognosis for improving his emotional, social and vocational adjustment is quite guarded at this time. Prognosis improves after age 40-45.

Respectfully submitted,

*James D. Nelson*
James D. Nelson, M.D.
Diplomate of the American Board of Psychiatry
and Neurology

JDN/jo

JAMES D. NELSON, M.D.

Diplomate of the American Board of Psychiatry and Neurology
737 West Allens Lane
Philadelphia, PA 19119
(215) 242-8055
Fax (215) 242-0305

October 29, 2001

Dr. Gary Reynolds
Federal Detention Center
700 Arch Street
Philadelphia, PA 19105

RE:      CALVIN PARKER
INMATE #   22157-038
D/EXAM     10/22/01

Dear Dr. Reynolds:

The following is an addendum to my report dated 10/23/01.

I did review the CT scan of Mr. Calvin Parker dated 10/17/01. It was my impression that the left cerebral hemisphere was smaller than the right.

If this is true, this development would most likely be due to genetic factors.

Very truly yours,

James D. Nelson, M.D.
Diplomate of the American Board of Psychiatry
and Neurology

JDN/jo

defendant's mother and is a junior high school student. Lamar and Latia are fathered by Ollin Bryant, Jr.

(95) **Half-Sister.** Zabidah Parker, age 19, resides with the defendant's mother and is a high school student. She is fathered by Farouk (LNU).

### Physical Condition

(96) Parker is 5' 6" tall and weighs approximately 180 pounds. He gained 40 pounds during the year after he stopped smoking crack cocaine. Parker has brown eyes and black hair.

### Mental and Emotional Health

(97) In May of 1998, as ordered by the Dorchester District Court, Parker underwent a mental health evaluation. Medical records from the Plymouth House of Correction (HOC) indicate that Parker has heard voices in his head since 1990, most recently saying "Down Thieves" and that Parker had been on medication for nerves and anxiety. Records further state that the defendant has a Schizotypal disorder, a drug abuse condition, and Schizophrenic reactions. Parker was also diagnosed with a sleeping disorder and provided with sleeping aides.

(98) While at Plymouth HOC, Parker visited with a psychiatrist on an as needed/ monthly basis. During these visits, the defendant complained at times about discoloration of his fingers and fingernails. It is noted that Parker denied being suicidal in his meetings but that it was discussed a number of times with his psychiatrist who described Parker as being hyper and paranoid. Additionally, Parker refused medication (Zoloft -- prescribed for depression and also obsessive-compulsive disorder) a number of times stating that it was "not enough."

### Substance Abuse

(99) Parker began consuming alcohol, smoking marijuana and sniffing cocaine at the age of 15 as a result of peer pressure. Shortly thereafter, his use of these substances increased to a daily basis. At the age of 17, the defendant began smoking crack-cocaine which caused him to have problems with the law as explained in the Criminal History section of this report. Parker admits that many

513-111                                                                                                                   AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CONSULTATION SHEET |
|---|---|

## REQUEST

| TO: P. CHELLAPPA M.D.<br>CONTRACT PSYCHIATRIST | FROM: (Requesting physician or activity) | DATE OF REQUEST |
|---|---|---|

REASON FOR REQUEST (Complaints and findings)

APP'T SCHEDULED FOR
: 11/1/04                                                     ( Zyprexa 10 mg pm )

PROVISIONAL DIAGNOSIS

| DOCTOR'S SIGNATURE | APPROVED | PLACE OF CONSULTATION | ☐ ROUTINE | ☐ TODAY |
|---|---|---|---|---|
| | | ☐ BEDSIDE    ☐ ON CALL | ☐ 72 HOURS | ☐ EMERGENCY |

## CONSULTATION REPORT

RECORD REVIEWED ☒ YES ☐ NO     PATIENT EXAMINED ☒ YES ☐ NO     TELEMEDICINE ☐ YES ☒ NO

DSM 4 DX

8AV - Follow up             Axis I  296.9

No complaints                        Axis II /
Stabilized mood                Axis III /
No SI or HI                        IV } same
NVV sundee                        V
Rx same / discussed w/pt.          Follow up
R  1) Zyprexa 10 mg pm x 8 weeks    12/27/04

SIGNATURE AND TITLE (signed) _____ (Continue on reverse side)

                                       P. CHELLAPPA M.D.       DATE
                                       CONTRACT PSYCHIATRIST   11/1/04

| HOSPITAL OR MEDICAL FACILITY | RECORDS MAINTAINED AT<br>F.C.I. Otisville, New York 10963 | DEPARTMENT/SERVICE OF PATIENT |
|---|---|---|
| RELATION TO SPONSOR | SPONSOR'S NAME (Last, first, middle) | SPONSOR'S ID NUMBER (SSN or Other) |

PATIENT'S IDENTIFICATION (For typed or written entries give: Name--last, first, middle; ID no. (SSN or other); Sex; Date of Birth; Rank/Grade)

REGISTER NO. 22157-038     WARD NO.

**SENSITIVE LIMITED OFFICIAL USE**

107 Parker, Calvin

CONSULTATION SHEET
Medical Record

STANDARD FORM 513 (REV. 4-98)
Prescribed by GSA/ICMR FPMR (41 CFR) 101-11.203(b)(10)

| CRIMINAL DOCKET | DOCKET NO. 9652CR00?57 | ATTORNEY NAME CPCS COLSON | |
|---|---|---|---|
| COURT DIVISION: Cambridge | INTERPRETER REQUIRED | DATE and JUDGE | DOCKET ENTRY |
| NAME, ADDRESS AND ZIP CODE OF DEFENDANT PARKER, CALVIN 14 FENELON STREET DORCHESTER, MA | | JUL 10 1996 Singleton JSMP JUL 10 1996 | ☑ Attorney appointed (SJC R. 3:10) ☐ Atty denied and Deft Advised per 211D §2A ☐ Waiver of counsel found after colloquy Terms of release set: Held w/o bail ☐ PR ☐ BAIL c.276, s.58A ☐ Held (276 §58A) ☐ See back for special conditions CONT'd |
| DEFT. DOB AND SEX 08/20/1969 M | OFFENSE CODE(S) | JUL 10 1996 | Arraigned and advised: ☑ Potential of bail revocation (276 §58) ☑ Right to bail review (276 §58) ☐ Right to drug exam (111E §10) |
| DATE OF OFFENSE(S) 07/02/1996 | PLACE OF OFFENSE(S) CAMBRIDGE | | Advised of right to jury trial: ☐ Does not waive ☐ Waiver of jury trial found after colloquy |
| COMPLAINANT BURKE, BRENDA A | POLICE DEPARTMENT (if applicable) CAMBRIDGE PD | | |
| DATE OF COMPLAINT 07/03/1996 | RETURN DATE AND TIME WARRANT | | Advised of trial rights as pro se (Supp. R. 4) Advised of right of appeal to Appeals Ct (R. 28) |

| COUNT/OFFENSE 1. 265/13A/B  A&B c265 §13A | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☑ WAIVED |

| DISPOSITION DATE and JUDGE 8/13/96  Sherman | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other: ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C) FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | 18 mos H of C 9 mos to serve Bal Susp 8/14/98 CONT'D |
|---|---|---|---|
| DISPOSITION METHOD ☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☑ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | JUDGE | DATE |

| COUNT/OFFENSE 2. 265/13A/B  A&B c265 §13A | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☐ WAIVED |

| DISPOSITION DATE and JUDGE 8/13/96  Sherman | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other: ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C) FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | 18 mos H of C 9 mos to serve conc w/CT-1 Bal Susp 8/14/98 CONT'D |
|---|---|---|---|
| DISPOSITION METHOD ☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☑ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | JUDGE | DATE |

| COUNT/OFFENSE 3. 266/18/B  B&E DAYTIME FOR FELONY c266 §18 | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☐ WAIVED |

| DISPOSITION DATE and JUDGE 8/13/96  Sherman | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other: ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C) 8/14/98 FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | 18 mos H of C 9 mos to serve conc w/CT 1 Bal Susp 8/14/98 CT 2 CONT'D |
|---|---|---|---|
| DISPOSITION METHOD ☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☑ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | JUDGE | DATE |

| COUNT/OFFENSE | 8/13/96 | | | | | ☐ WAIVED |

| DISPOSITION DATE and JUDGE | | SENTENCE OR OTHER DISPOSITION | |
|---|---|---|---|
| DISPOSITION METHOD ☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm.   ☐ Request of Victim ☐ Request of Deft   ☐ Failure to prosecute   ☐ Other: ☐ Filed with Deft's consent   ☐ Nolle Prosequi   ☐ Decriminalized (277 §70C) FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | ROBERT L. MOSCOW |

COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX, ss.
DISTRICT COURT DEPARTMENT OF THE TRIAL COURT
Cambridge Division

A TRUE COPY OF A DOCUMENT IN THE OFFICE OF THE CLERK-MAGISTRATE OF THIS COURT

ADDITIONAL COUNTS ATTACHED

COURT ADDRESS
Cambridge District Court
40 Thorndike Street
Middlesex County Courthouse

A TRUE COPY | CLERK-MAGISTRATE/ASST. CLERK | ON (DATE)

Cambridge Police records indicate that on 07/02/96, the defendant went to Annie Ruth Spencer's residence at 107 Norfolk Street, Cambridge, MA in order to give her money for their two children. Ms. Spencer told the defendant that she did not want him in her residence, but he forced himself in and began calling for his son Calvin to come with him. Ms. Spencer told her son not to go with the defendant. Ms. Spencer's other two year old daughter, Shayla Spencer, (not the defendant's child) followed the defendant at which point the defendant stated "I'll take your little girl" and struck her several times on the hands and arms. The defendant then grabbed Ms. Spencer by the left arm, bending her fingers and hands backward and began bitting her on the wrist. The officer did note a visible injury. Ms. Spencer then called the police to have the defendant removed, at which point he grabbed the telephone and threw it. The defendant then grabbed Ms. Spencer by her throat and pushed her before fleeing the apartment.

An emergency 209A (restraining order) was issued by on-duty Judge Bletzer from Newton District Court. An arrest warrant was issued for the defendant.

| (61) 09/16/97 (age 28) | Operating MV After Susp. Lic. Dkt#9747CR1778 Concord District Court | 9/16/97: Adm. suff. facts, cont. w/out find. to 3/13/98, $250 ct. costs & $35 VWF. 10/24/97: Def. Warr. 1/6/98: Viol. of Prob., cont. w/out find. is revoked & glty. finding is entered; 30 days HC. | 4A1.1(c) 4A1.2(c)(1) 1 |
|---|---|---|---|

Court records indicate that the defendant was represented by counsel.

Records further indicate that the offense occurred on 09/15/97 in Lincoln, MA, and that the defendant was arrested by the Lincoln Police on this same date.

34

## Criminal History Computation

(63) Based on the above convictions, the defendant has a subtotal criminal history score of 23.

(64) At the time that the instant offense was committed, the defendant was under the criminal justice sentences imposed on 08/13/96 in Cambridge District Court and 09/16/97 in Concord District Court. Two (2) points are added, pursuant to U.S.S.G § 4A1.1(d).

(65) The instant offense was committed less than two (2) years following the defendant's release from custody on 04/22/96 for the sentence imposed on 05/06/91. One (1) point is added, pursuant to U.S.S.G. § 4A1.1(e).

(66) The total of the criminal history points is 26. According to the sentencing table (U.S.S.G. Chapter 5, Part A), 13 or more criminal history points establish a criminal history category of VI.

TOTAL POINTS        26

CATEGORY            VI

(67) As detailed above, the defendant is a <u>Career Offender</u> as he has at least two prior felony convictions of either a crime of violence or an applicable controlled substance counted separately under the provisions of § 4A1.1(a)(b) or (c), (See offenses specified in ¶'s 53, 55, 57, 58, 59, 60, and 62). His criminal history category is VI, pursuant to the provisions of U.S.S.G § 4B1.1.

# United States Court of Appeals
## For the First Circuit

---

No. 03-2219

UNITED STATES,

Appellee,

v.

DAVID MACKINNON, A/K/A OVID,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Robert A. O'Meara for appellant.
John A. Wortmann, Jr., Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

---

March 16, 2005

---

**STAHL, Senior Circuit Judge.** Appellant David "Ovid" MacKinnon was sentenced before the Supreme Court's decision in United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), under a mandatory Guidelines system, as a career offender to 262 months imprisonment after pleading guilty to one count of drug trafficking. His initial request to this court was for a review of the district court's denial of his motion for downward departure, claiming, inter alia, that his physical, mental, and familial circumstances, as well as the fact that his criminal history consists of mostly minor street crimes, took him out of the "heartland" of typical cases with the same sentencing range. He also claimed that his sentence violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. At the invitation of this Court, MacKinnon has filed two supplemental briefs arguing that he should be resentenced in light of Booker. We agree and remand for resentencing.

## I. BACKGROUND

Between July 1999 and December 2001, the Drug Enforcement Agency ("DEA"), in conjunction with local, state, and federal agencies, conducted an investigation of drug trafficking in and around the Franklin Hill Housing Project in Dorchester, Massachusetts. During the course of the investigation, on three occasions, MacKinnon was observed selling crack cocaine.

On January 30, 2002, MacKinnon was charged with

distributing five grams or more of cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1), and Aiding and Abetting in violation of 18 U.S.C. § 2. Subsequently, on April 2, 2002, the government filed an information pursuant to 21 U.S.C. § 851, informing MacKinnon that he faced enhanced penalties under 21 U.S.C. § 841(b)(1)(B), and establishing MacKinnon's predicate felony convictions for purposes of enhanced sentencing under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1.

On January 6, 2003, MacKinnon pleaded guilty to the one count of drug trafficking, but reserved his right to dispute that the amount of drugs involved in the offense of conviction was "five grams or more."[1]

The probation department issued a Pre-Sentence Report ("PSR"), and, based upon the fact that MacKinnon had at least four predicate felony convictions of either a crime of violence or an applicable controlled substance offense, it concluded that MacKinnon was a career offender pursuant to U.S.S.G. § 4B1.1. MacKinnon's resulting base offense level as calculated in the PSR was 37, and his Criminal History Category ("CHC") was VI. The PSR awarded MacKinnon a three-level downward adjustment for acceptance of responsibility, resulting in an adjusted offense level of 34.

---

[1] MacKinnon claimed below that the government was unable to prove that the weight of the drugs seized in the offense of conviction was five grams or more because there were less than five grams after testing.

Thus, MacKinnon's Guideline Sentencing Range was 262-324 months' imprisonment.

MacKinnon moved for downward departure on numerous grounds, and the government opposed MacKinnon's request.

At the sentencing hearing, the district court criticized the government's decision to file an § 851 information in MacKinnon's case. Just prior to imposing the sentence, the district court stated:

> I do not believe that the law allows me to depart in this case. . . . There are simply no bases under the law, as I understand it, that allow a departure. It is an obscene sentence that has to be imposed. It is unwarranted by the conduct, granted that Mr. MacKinnon has a hugely long record, but 188 months, which [is what] the sentence would have been without the [§] 851 notice, was more than adequate for this then forty-five-year-old man to serve, he would have been sixty or so when he got out, but I have no choice.

The court further stated: "I have worked hard on the memorandum and tried to figure out some way under the law in which the sentence could be reduced. I can't do it. And although I totally disagree with our government's policies at this stage concerning sentencing, I am bound to obey my oath and to do this according to principle, knowing all the time that this is an unjust, excessive and obscene sentence." The court then concluded by stating "I have no power to grant you leniency. I'm without authority to do other than as the statute prescribes, having in mind the charging decisions that were made and the 851 notice." The court then sentenced MacKinnon to

the minimum permitted under the mandatory Guidelines scheme, 262 months' incarceration followed by eight years of supervised release.

Finding that remand is warranted in light of Booker, we remand for resentencing, and thus we do not address MacKinnon's claims of sentencing error under our pre-Booker precedent or violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

## II. DISCUSSION

In United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), decided after we heard argument in MacKinnon's case, the Supreme Court excised the provision of the Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 211-238, 98 Stat. 1987 (1984), that made the Guidelines mandatory in federal court sentencing, 18 U.S.C. § 3353(b)(1). See 125 S. Ct. at 764-68.[2] In addition, the Court stated that the principles announced in Booker apply to all cases pending on direct review. Id. at 769. Courts of appeals were then directed, when evaluating claims under Booker, to "apply ordinary prudential doctrines, determining, for example, whether

---

[2] The Court also excised the provision of the Sentencing Reform Act that gave the courts of appeals de novo review over certain aspects of sentencing, 18 U.S.C. § 3742(3). See Booker, 125 S Ct. at 764-68. The two excised portions of the Act were severed, leaving the remainder of the Sentencing Reform Act intact. See United States v. Antonakopoulos, No. 03-1384, 2005 WL 407365, at *12-*13 (1st Cir. Feb. 22, 2005).

the issue was raised below and whether it fails the 'plain error' test." Id.

In United States v. Antonakopoulos, this court held that the error under Booker is that "the defendant's Guidelines sentence was imposed under a mandatory system." Antonakopoulos, 2005 WL 407365, *10. And, we held there that the argument that a Booker error occurred is preserved if the defendant below argued error under Apprendi v. New Jersey, 520 U.S. 466 (2000), or Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), or that the Guidelines were unconstitutional. Antonakopoulos, 2005 WL 407365, at *13. Here, MacKinnon made no such arguments below, and thus his claim under Booker is unpreserved.

In Antonakopoulos, we also set forth the applicable framework for review of unpreserved Booker claims. Utilizing the four-prong test set forth in United States v. Olano, 507 U.S. 725 (1993), there must be (1) an error (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See Antonakopoulos, 2005 WL 407365, at *14-*15. We went on to describe a situation similar to that presented by MacKinnon as one presenting a strong argument for remand:

> [H]istory shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently. Where the district judge has said as much

-6-

>about a Guidelines sentence, that is a powerful argument for remand. If the resulting sentence after remand is itself unreasonable, the government can appeal.

Id. at *24-*25 (internal citations omitted).

Here, we believe that this record, in light of the judge's comments and the numerous grounds presented by MacKinnon for departure that could not be considered under a mandatory Guidelines system, presents a case for remand.

Accordingly, MacKinnon's sentence is **VACATED**, and the case is **REMANDED** for resentencing.

-7-