UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
– – – – – – – – – – – – – – X

CALVIN PARKER,
    petitioner

    v.                            Civil No. 05-10894-NG

UNITED STATES,
    respondant

– – – – – – – – – – – – – – X

PETITIONER'S RESPONSE AND TRAVERSE
TO GOVERNMENT'S OPPOSITION TO HIS
28 U.S.C. § 2255 MOTION   FOR
<u>RECONSIDERATION</u>

    Now comes the petitioner, Calvin Parker, pro se, who respectfully requests this Court to consider his Response and Traverse to Government's Opposition to his 28 U.S.C. § 2255 Motion for reconsideration.

    The United States in it's opposition has taken the position that although his § 2255 Motion was filed timely, the Court has no authorization over Parker's Motion because of other timeliness issues.

    However, on April 21, 2005, this Court denied Government's Motion for reconsideration. Also see original section § 2255 at page 5 of 7.

    Petitioner has alleged other issues as grounds which this Court has discretion and legal power for clarification.

    The United States cites and relys on the Supreme Court's decision in <u>Booker</u>, 543 U.S. ___, 125 S Ct. 738 (2005), depending on that decision alone to incur that the District Court would reject the Parker's other Constitutional issues, which are: Prosecutor introduced ineffective information at sentencing to establish a prior conviction for purposes of applying statutory provision U.S.S.G. § 4B1.1 Career Offender. The authorizing statute 28 U.S.C. § 994 (H) must be const-

rued constitutionally, for the enhancement to apply, as a matter of statutory construction, that prior convictions be pleaded and proven beyond a reasonable doubt, to avoid serious constitutional questions.

This was not done in Parker's case.

Parker will establish, if afforded a hearing on this matter, that the Prosecutor explicitly specified the two (2) prior convictions on the record tht were used to apply the sentence enhancement under U.S. S.G. § 4B1.1 Career Offender, and that one of these convictions was established with ineffective information, thereby violating Parker's Constititutional Right.

## FACTUAL BACKGROUND

On or aboutJune 20, 1998, Parker appeared in U.S. District Court, District of Massachusetts, before your Honor, on an indictment against seventy one (71) defendants, including Parker, for conspiracy to distribute cocaine in excess of fifty (50)grams, but less than one hundred and fifty(150) grams (cocaine base). The Court then appointed defense cousel John H. Cuhna to represent Parker.

In June, 1999, Parker plead guilty to one count, count 54, of the indictment, involving less than five (5) grams of cocaine base. During the plea colloquy the U.S. Prosecutor gave notice of his intent to seek a sentence above the guideline range, and specifying and relying on the convictions at count fify five (55) and sixty (60), stating that Parker qualified as a career offender.

Parker objected, and filed motion to dismiss his appointed counsel John H. Cuhna. The Court granted this motion and appointed to him Geraldine Hines as his new counsel. Do to family problems, Attorney Hines stepped down and was finally replaced with Attorney Jullianne

Balliro.

On January 28, 2002, Parker appeared in this Court for sentencing. He was represented by Attorney Balliro, who argued for a downward departure for Parker under 5k2.13, of U.S.S.G., for diminished capacity. The U.S. Prosecutor opposed this argument by asserting to the Court that 4B1.1 Career Offender statute prohibited such a departure. This prohibitive clause has since been lifted and it has been deemed discretionary for Judges to consider such departures under Booker.

The Government explicitly specified and introduced the two (2) prior convictions relied on at sentencing to enhance Parker's guideline level (see docket entry at 1709) by providing to the Court the criminal complaint from Suffolk Superior Court conviction at docket No. 09165, alleging that on August 18, 1990, the defendant Calvin Parker, did commit an assault and battery upon one "Cyril Durham" by means of a certain dangerous weapon. This is not in dispute by Parker.

However, Parker does make a constitutional challenge to the second prior conviction that the Government used to enhance his federal sentence. The Government at sentencing, provided the Court with fact on the record of a prior violent crime. This crime being Cambridge District Court conviction at docket No. 9652CR002257A-C.

The Government in establishing evidence of this prior conviction, relied soley on the information provided to the Court by the Pre Sentence Investigation Report (PSIR), which states in short language, that on July 2, 1996, the defendant, Calvin Parker, did forcebly break and enter the home of "Annie Spencer" in the day time, and did commit an Assault and Battery upon one "Annie Spencer".

The evidence provided at sentencing is fatal to the validity of the conviction, the prosecutor established a violent crime against one

Annie Spencer, but the facts introduced by the Government do not establish or warrant a finding of guilt to the accuser at docket No. 9652 CR002257A-C.

The complaint introduced at docket No. 9652CR002257, visually confirm that "Burke Brenda" is the complaintiff that filed the charges of Assault and Battery and Breaking and Entering on July 3, 1996, in Cambridge District Court, at doket No. 9652CR002257A-C.

Because the Court must find facts relevant to each of the applicable factors under 3553 (a), and must resolve all material factual disputes, see"Fed. R. Crim. P. 32(I), and must resolve them with care, see U.S.S.G. §6A1.3. When Federal Judicial disctetion was more limited pre Booker, than it is now post Booker , a defendant had a right under the Due Process Clause of the Constitution not to be sentenced based on misinformation or facts that wre materially untrue". United States v. Tucker, 404 U.S. 443, 447 (1972).

As noted Parker will perform his constitutional duties to show and provide the Court with factual evidence, if he is granted a hearing, that will rebute theGovernment's claim of a proper sentence by showing the name "Annie Spencer" relied on in the PSIR could not establish facts of a violent act to the name "Burke, Brenda" in the complaint, because they are not the same person. (See Exhibit ___ ).

In this case, as in Shepard, the Government did attempt to rely on Police Arrest Reports, and the complaint application, to establish and support the conviction at docket No. 9652CR002257A-C. The Supreme Court rejected this attempt, holding as a matter of statutory interpretation and in light of it's prior decision in Taylor v. United States, 495 U.S. 575 (1990), that a Court cannot rely on such documents submitted (described as documents submitted to lower courts even prior

charges). This Constitutional problem has already been determined to be avoided in Dillard v. Roe, 244 F.3d 758 (9th Cir. 2001), where the failure to allege and prove an enhancing factor in a prior conviction violated the sixth amendment.

Nor may the Government introduce additional evidence at resentencing on an issue it had full an fair opportunity to litigate at the first sentencing. See United States v. Montero, 370 F.3d 121-124 (1st Cir. 2004); United States v. Parker, 30 F.3d 542, 553-54 (4th Cir. 1994).

The Government in its opposition, repeatedly asserts to the Court that Parker is time barred and has no merits, pursuant to collateral review for resentencing under 28 U.S.C. § 2255, do to the fact that the plea agreement waives collateral review challenges. Parker contends that the Government is mistaken in its belief, because a plea agreement waiver cannot overshadow a miscarriage of justice of "plain error" rendered soley on behalf of the prosecutor at sentencing nor can a plea waiver relenquish the prosecutor from its constitutional oath and duties under requirement of the Sixth Amendment to provide accurate information at sentencing of establishing factors in a prior conviction for the enhancement to apply. In this case rendered the plea waiver in violation of the Due Process Clause. See United States v. Tucker, 404 U.S. 443, 447 (1972).

Parker's next claim of plain error relies on the First Circuit Court's of Appeals decision in United States v. McKinnon, No. 03-2219,4 (1st Cir. March 16, 2005) (Remanding for resentencing on the grounds, after finding plain error which requires the defendant to show he was prejudiced by the application of enhancement of a mandatory guideline.

Parker in the case at bar has an identical claim of plain error in regard to section U.S.S.G. § 5k2.13, diminished capacity, do to the

fact that in April of 2001, Attorney Jullianne Balliro argued for a downward departure on the behalf of Parker, at what was scheduled to be a sentencing hearing (see transcript of sentencing at docket entries 1650-1652.

Because Parker is able to make the plain error showing identical to the Appeals Court decision in McKinnon, based in part on the language provided in the transcripts by the sentencing Judge he should be granted a hearing on this § 2255. (see where your Honor stated "I do not believe I am permitted to depart under the guidelines for the defendant, but I will see what I can do under the law". Your Honor then ordered the Bureau of Prisons to conduct a mental health evaluation of Parker at docket entries 1650-1652.

Though the Court had been provided confirmation by the Bureau of Prisons report of neurological an psychiatric examination identifying Parker's actions in the instant offense point to a genetic basis of poor education, vocational and social adjustments and of impairment disorder, he was considered to be ineligible for downward depature consideration, because of the then restrictive and mandatory atmosphere of the Federal Sentencing Guidelines. This restriction has since been lifted post Booker.

The Government has claimed that Parker is barred from collateral review citing Booker, not being retroactive, However, in U.S. v. Ernesto Cirilo-Munoz, No. 02-1846 (1st Cir. April 15, 2005), the First Circuit held that "As part of his section 2255, petitioner Cirilo filed a supplemental brief seeking additional 'review' of his sentence in light of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004) which we allowed". "Cirilo urges resentencing because the jury did not find beyond a reasonable doubt that they believed that "Mejias" was a Police Officer.

Blakely, claims are now viewed through the lens of U.S. v. Booker, 125 S.Ct. 738 (2005).

In concluding Cirilo's 2255 motion for review of his sentence, the First Circuit vacated his sentence and the matter was remanded to Judge Laffitte for resentencing.

Parker asks this Honorable Court for the same consideration.

Whereas Parker is semi-illiterate, unable to type, understand the complexities of the Federal Rules and Procedures, has a very limited education and vocabulary, and has no attorney to help him, his friend and Jail-House lawyer, albeit a novice himself, Paul Whooten 22775-038, did help to prepare this traverse and response to the Government's opposition to Parker's § 2255 motion. He hopes and prays that his humble efforts are sufficient enough to express Parker's facts and issues to the point of making the Court aware of Parker's right to a hearing on this matter.

Wherefor, Parker respectfully requests that this Honorable Court consider his facts and arguments and based on them Grant and Order his 28 U.S.C. § 2255 motion.

Date: August _17_, 2005.

Respectfully submitted,

*Calvin Parker*
Calvin Parker 22157-038
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

CERTIFICATE OF SERVICE

I, Calvin Parker, pro se, do hereby certify that I did cause to be served one true and correct copy of the foregoing: Petitioner's Response and Traverse To Government's Opposition To His 28 U.S.C. § 2255 Motion for Reconsideration, on the below named, by placing same in the U.S. mail receptacle, first class postage affixed, at U.S. Penitentiary, Lewisburg, PA, on this __17__ day of August, 2005.

Addressee:
United States Attorney's Office
U.S. Courthouse
John J. Moakley Courthouse
One Courthouse Way
Boston, MA 02210

Calvin Parker 22157-038
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

| CRIMINAL DOCKET | DOCKET NO. 9652CR00?57 | | ATTORNEY NAME CPCS COLSON | |
|---|---|---|---|---|
| COURT DIVISION Cambridge | ☐ INTERPRETER REQUIRED | | DATE and JUDGE | DOCKET ENTRY |
| NAME, ADDRESS AND ZIP CODE OF DEFENDANT PARKER, CALVIN 14 FENELON STREET DORCHESTER, MA | | | JUL 10 1996 Singleton Jimo JUL 10 1996 JUL 10 1996 | ☑ Attorney appointed (SJC R. 3:10) ☐ Atty denied and Deft Advised per 211D §2A ☐ Waiver of counsel found after colloquy Terms of release set: Held w/o bail ☐ PR ☐ BAIL: ☐ Held (276 §58A) c. 276, s. 58A ☐ See back for special conditions cont'd Arraigned and advised: ☑ Potential of bail revocation (276 §58) ☑ Right to bail review (276 §58) ☐ Right to drug exam (111E §10) |
| DEFT. DOB AND SEX 08/20/1969 M | OFFENSE CODE(S) | | | |
| DATE OF OFFENSE(S) 07/02/1996 | PLACE OF OFFENSE(S) CAMBRIDGE | | | Advised of right to jury trial: ☐ Does not waive ☐ Waiver of jury trial found after colloquy |
| COMPLAINANT BURKE, BRENDA A | POLICE DEPARTMENT (if applicable) CAMBRIDGE PD | | | |
| DATE OF COMPLAINT 07/03/1996 | RETURN DATE AND TIME WARRANT | | | Advised of trial rights as pro se (Supp. R. 4) Advised of right of appeal to Appeals Ct (R. 28) |

| COUNT/OFFENSE 1. 265/13A/B  A&B c265 §13A | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|---|
| DISPOSITION DATE and JUDGE 8/13/96   Sherman | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft  ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C) | | | | 18 mos Hof C 9 mos to serve Bal susp 8/14/98 cont'd |
| DISPOSITION METHOD ☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☑ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | | | | |
| | | FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | | | JUDGE | DATE |

| COUNT/OFFENSE 2. 265/13A/B  A&B c265 §13A | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|---|
| DISPOSITION DATE and JUDGE 8/13/96  Sherman | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft  ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C) | | | | 18 mos Hof C 9 mos to serve conc w/ ct-1 Bal susp 8/14/98 |
| DISPOSITION METHOD ☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☑ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | | | | |
| | | FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | | | JUDGE | DATE cont'd |

| COUNT/OFFENSE 3. 266/18/B  B&E DAYTIME FOR FELONY c266 §18 | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|---|
| DISPOSITION DATE and JUDGE 8/13/96  Sherman | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft  ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C) | | | | 18 mos Hof C 9 mos to serve conc w/ ct 1 Bal susp 8/14/98 ct 2 |
| DISPOSITION METHOD ☑ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☑ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | | | | |
| | | FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | | | JUDGE | DATE cont'd |

| COUNT/OFFENSE 8/13/96 - [illegible] | | FINE | SURFINE | COSTS | RESTITUTION | V.W. ASSESSMENT ☐ WAIVED |
|---|---|---|---|---|---|---|
| DISPOSITION DATE and JUDGE | | SENTENCE OR OTHER DISPOSITION ☐ Sufficient facts found but continued without guilty finding until: ☐ Probation   ☐ Pretrial Probation (276 §87) - until: ☐ To be dismissed upon payment of court costs/restitution ☐ Dismissed upon: ☐ Request of Comm. ☐ Request of Victim ☐ Request of Deft  ☐ Failure to prosecute ☐ Other: ☐ Filed with Deft's consent ☐ Nolle Prosequi ☐ Decriminalized (277 §70C) | | | | |
| DISPOSITION METHOD ☐ Guilty Plea or Admission to Sufficient Facts accepted after colloquy and 278 §29D warning ☐ Bench Trial ☐ Jury Trial ☐ None of the Above | FINDING ☐ Not Guilty ☐ Guilty ☐ Not Responsible ☐ Responsible ☐ No Probable Cause ☐ Probable Cause | | | | | |
| | | FINAL DISPOSITION ☐ Dismissed on recommendation of Probation Dept. ☐ Probation terminated: defendant discharged | | | JUDGE ROBERT L. MOSCOW | DATE |

ADDITIONAL COUNTS ATTACHED

A TRUE COPY  X   CLERK-MAGISTRATE/ASST. CLERK   ON (DATE)

COURT ADDRESS
Cambridge District Court
40 Thorndike Street
Middlesex County Courthouse
East Cambridge, MA 02141

Cambridge Police records indicate that on 07/02/96, the defendant went to Annie Ruth Spencer's residence at 107 Norfolk Street, Cambridge, MA in order to give her money for their two children. Ms. Spencer told the defendant that she did not want him in her residence, but he forced himself in and began calling for his son Calvin to come with him. Ms. Spencer told her son not to go with the defendant. Ms. Spencer's other two year old daughter, Shayla Spencer, (not the defendant's child) followed the defendant at which point the defendant stated "I'll take your little girl" and struck her several times on the hands and arms. The defendant then grabbed Ms. Spencer by the left arm, bending her fingers and hands backward and began bitting her on the wrist. The officer did note a visible injury. Ms. Spencer then called the police to have the defendant removed, at which point he grabbed the telephone and threw it. The defendant then grabbed Ms. Spencer by her throat and pushed her before fleeing the apartment.

An emergency 209A (restraining order) was issued by on-duty Judge Bletzer from Newton District Court. An arrest warrant was issued for the defendant.

| (61) | | | |
|---|---|---|---|
| 09/16/97 (age 28) | Operating MV After Susp. Lic. Dkt#9747CR1778 Concord District Court | 9/16/97: Adm. suff. facts, cont. w/out find. to 3/13/98, $250 ct. costs & $35 VWF. 10/24/97: Def. Warr. 1/6/98: Viol. of Prob., cont. w/out find. is revoked & glty. finding is entered; 30 days HC. | 4A1.1(c) 4A1.2(c)(1) __1__ |

Court records indicate that the defendant was represented by counsel.

Records further indicate that the offense occurred on 09/15/97 in Lincoln, MA, and that the defendant was arrested by the Lincoln Police on this same date.

defendant's mother and is a junior high school student. Lamar and Latia are fathered by Ollin Bryant, Jr.

(95) **Half-Sister.** Zabidah Parker, age 19, resides with the defendant's mother and is a high school student. She is fathered by Farouk (LNU).

### Physical Condition

(96) Parker is 5' 6" tall and weighs approximately 180 pounds. He gained 40 pounds during the year after he stopped smoking crack cocaine. Parker has brown eyes and black hair.

### Mental and Emotional Health

(97) In May of 1998, as ordered by the Dorchester District Court, Parker underwent a mental health evaluation. Medical records from the Plymouth House of Correction (HOC) indicate that Parker has heard voices in his head since 1990, most recently saying "Down Thieves" and that Parker had been on medication for nerves and anxiety. Records further state that the defendant has a Schizotypal disorder, a drug abuse condition, and Schizophrenic reactions. Parker was also diagnosed with a sleeping disorder and provided with sleeping aides.

(98) While at Plymouth HOC, Parker visited with a psychiatrist on an as needed/ monthly basis. During these visits, the defendant complained at times about discoloration of his fingers and fingernails. It is noted that Parker denied being suicidal in his meetings but that it was discussed a number of times with his psychiatrist who described Parker as being hyper and paranoid. Additionally, Parker refused medication (Zoloft -- prescribed for depression and also obsessive-compulsive disorder) a number of times stating that it was "not enough."

### Substance Abuse

(99) Parker began consuming alcohol, smoking marijuana and sniffing cocaine at the age of 15 as a result of peer pressure. Shortly thereafter, his use of these substances increased to a daily basis. At the age of 17, the defendant began smoking crack-cocaine which caused him to have problems with the law as explained in the Criminal History section of this report. Parker admits that many



RE: PARKER, CALVIN
Dr. Gary Reynolds
October 23, 2001
Page 3

The psychiatric examination reveals the following significant findings. His affect is somewhat dull and flat. He does not converse spontaneously. He is slow in responding to my questions, some of which have to be repeated as if he has had some difficulty understanding what I am asking. When he does respond he responds slowly, obviously having difficulty organizing and verbalizing his thoughts. There is evidence of impairment in cognitive functions including language functions, attentiveness, concentration, immediate memory, abstract thinking. He also has problems with frustration tolerance and impulse control. At times he does tend to compulsively ruminate. His frustration tolerance is low, his impulse control poor, his insight and judgment faulty and he is often anxious and depressed.

**IMPRESSION** - 1) Anti Social Personality - Manifested by Anti Social and Irresponsible Behavior beginning at age 15. Example: He never married the mother of his 2 children and I doubt if he ever supported his 2 children. He has been convicted of stealing from people, beating up people, selling drugs. 2) Minimal Diffuse Cerebral Dysfunction - Caused by Genetic Problems and Manifested by Learning Disabilities and Attention Deficit Hyperactivity Disorder - Aggravated by 3) Closed Head Injury with Cerebral Concussion Complicated by Post Concussion Syndrome with Resulting Post Traumatic Headaches, Post Traumatic Cognitive Disorder and Aggravating Pre-existing Nervousness, Hyperirritability, Low Frustration Tolerance and Poor Impulse Control. 4) Cocaine Abuse.

**RECOMMENDATIONS** - Continued Risperdal and Prozac. For headaches I would first try Midrin and Fioricet.

**PROGNOSIS** - Prognosis for controlling headaches is good. Prognosis for improving his emotional, social and vocational adjustment is quite guarded at this time. Prognosis improves after age 40-45.

Respectfully submitted,

*James D. Nelson*
James D. Nelson, M.D.
Diplomate of the American Board of Psychiatry
and Neurology

JDN/jo

RE: PARKER, CALVIN
Dr. Gary Reynolds
October 23, 2001
Page 2

University. In the meantime, he picked up a Cocaine habit and was arrested and convicted on 4 occasions: Larceny (age 17), Assault and Battery, Aggravated Assault, and finally Distribution of Cocaine. He was also arrested for domestic disturbances. He tells me that his Cocaine habit was costing him 400 to 500 dollars per day.

**HISTORY OF THE PRESENTING PROBLEMS** - During an alteration approximately 12 years ago he was struck on the back of his head. He was rendered immediately unconscious. He was taken from the scene of the alteration to a local hospital where he was hospitalized for 3-4 days. There he was examined, his lacerated scalp was sutured, he was given imaging studies, and he was treated. Upon stabilizing he was discharged. He tells me that since that time he has experienced recurrent headaches, dizziness, impairment in cognitive functions including attention, concentration, recent memory, ability to organize and verbalize thoughts, at times difficulty understanding speech, decreased frustration tolerance, decreased psychomotor activity, anergy and drive.

**STATEMENT OF THE PRESENTING PROBLEMS** - 1) The problems that most concerns him at the present time are his recurrent headaches: Frequency - 2-3 times per week; Location - occipital and bi-temporal; Character - intense pulsating and muscle contracture "Squeezing type"; Duration - 4-5 hours. 2) Cognitive impairment. 3) Insomnia - While he is trying to go to sleep, he ruminates "about a lot of my problems."4) Nervousness, hyperirritability, low frustration tolerance.

**EXAMINATION** - He is a well developed, well nourished 32 year old right handed Afro American male. He is dressed in a prisoner's uniform. He is hand cuffed and foot cuffed. He is accompanied by an attendant. He is ambulatory, oriented, alert, verbal, and cooperative.

The neurological examination reveals no abnormal focal findings. His cranial nerves revealed fields that were full to confrontation. The pupils were 4mm and reactive to light. Fundi are benign bilaterally. Extraocular muscles intact. Face was symmetric with normal sensation. Rinne and Weber testing of the patient's hearing is normal. Palate was upgoing. There is 5/5 trapezius strength and tongue was midline. Motor examination revealed symmetric bulk and normal tone. Strength was 5/5 throughout. Reflexes are symmetric at 2 throughout. Plantar responses were flexor bilaterally. Sensory exam was intact to light, touch and pin prick, proprioception, and vibration. On cerebellar exam there was no finger to nose dysmetria. Gait was nonataxic. The patient is able to walk tandem. Romberg was not present. No adventitious movements. Autonomic functions intact.

PSYCHIATRY   Case 1:05-cv-10894-NG   Document 10-7   Filed 08/22/2005   Page 1 of 4      NEUROLOGY

**JAMES D. NELSON, M.D.**

Diplomate of the American Board of Psychiatry and Neurology
737 West Allens Lane
Philadelphia, PA 19119
(215) 242-8055
Fax (215) 242-0305

October 23, 2001

Dr. Gary Reynolds
Federal Detention Center
700 Arch Street
Philadelphia, PA 19105

RE:      **CALVIN PARKER**
INMATE # 22157-038
D/EXAM   10/22/01

Dear Dr. Reynolds:

At your request I examined the above captioned inmate in my office on 10/22/01. The following is the report of neurological and psychiatric examination.

**IDENTIFICATION** - Calvin Parker is a thirty two year old right handed inmate in the Federal Detention Center in Philadelphia, PA. He is unmarried and a father of two children whom he sired while living with the unwed mother.

**PAST HISTORY** - He was born in Montgomery, Alabama into a single parent home. He never knew his biological father. He has one brother and two sisters and is the oldest of the --four siblings. His mother a switchboard operator took him to Boston, Massachusetts when he was 5 years old. He was enrolled into the local public school when he was quickly found to be retarded. He was also a stutterer. He was also a behavioral problem. Early on he was placed into a special class and he remained in special classes until he dropped out of school in his mid teens. He tells me that since age 11 he has been under the care of a psychiatrist off and on and that he has been prescribed Risperdal (anti psychotic medication) and Prozac (anti depressant medication) for nervousness and depression.

I should note that 2 of his siblings were also placed in special classes, and at age 11, he was diagnosed Attention Deficit Hyperactivity Disorder. These 2 factors point to a genetic basis for his poor educational, vocational and social adjustments rather that economic and cultural deprivation. After leaving school he worked as an unskilled laborer in his uncles construction company. He also worked as a "prep cook" at Boston