UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CALVIN PARKER,        ) | |
|     Petitioner,       ) | |
|                         ) | |
| v.                    ) | Docket No. 05-CV-10894-NG |
|                         ) | |
| UNITED STATES OF AMERICA,  ) | |

GERTNER, D.J.

### ORDER OF DISMISSAL
October 31, 2005

For the reasons described below, Calvin Parker's petition under 28 U.S.C. § 2255 is **DENIED** and this action is **DISMISSED**.

A.  **Procedural History**

On June 10, 1998, Calvin Parker was indicted, together with more than 30 other defendants, for various drug distribution and conspiracy charges [98-cr-10185-NG].  On June 4, 1999, Parker entered into a plea agreement in which he agreed to plead guilty to one substantive crack cocaine distribution charge (Count 54, involving less than 5 grams of crack cocaine); agreed that the total quantity of crack cocaine attributable to him pursuant to U.S.S.G. §2D1.1 was at least 50 but less than 150 grams of crack cocaine; agreed that he qualified for sentencing as a career offender pursuant to U.S.S.G. §4B1.1; and agreed that his Base Offense Level pursuant to U.S.S.G. §4B1.1 was 32.  In exchange, the government agreed to dismiss the remaining counts against Parker and to recommend a sentence of no more than 151 months

(the low end of the GSR applicable to a BOL of 32 after deducting 3 offense levels for timely acceptance of responsibility).[1]

Parker qualified as a career offender because the instant offense was a drug felony, and he had seven prior state convictions that qualified as predicates to a federal career offender sentence.

In December 1999, prior to sentencing, Parker moved to withdraw or dismiss his attorney, John Cuhna.  In January 2000, Parker renewed his motion for new counsel and moved to withdraw his guilty plea.  In February 2000, the Court granted Parker's motion, dismissed Attorney Cuhna and appointed Attorney Geraldine Hines.  Within months, Attorney Hines was replaced by Attorney Julianne Balliro.

In September 2000 and April 2001, upon motion by Parker, the Court ordered psychiatric examinations of Parker pursuant to 18 U.S.C. § 3552(b).

During a hearing in December 2001, Parker withdrew his January 2000 motion to withdraw his guilty plea.

---

[1] Notably, the plea agreement involved an error that benefitted Parker: In prosecuting the Castlegate Road gang, the government allowed defendants who were career offenders to plead to the single substantive distribution count involving the largest single quantity of crack cocaine which they had sold to a cooperating witness during the course of the investigation. In Count 67, Parker was charged with the sale of 5.7 grams of crack cocaine, for which the maximum applicable penalty would have been 40 years (GSR 188-235 months). Here, the government allowed Parker to plead to Count 54, charging him with the sale of less than 5 grams of crack cocaine, for  which the maximum applicable penalty was 20 years (GSR 151-188 months).

On January 28, 2002, Parker was sentenced to a prison term of 151 months, the low end of the applicable career offender GSR, based on a total offense level of 29, and a criminal history category VI.

As of February 7, 2002, the last day for Parker to timely file a notice of appeal, no notice had been filed. Indeed, in an affidavit, Parker's attorney states that she and Parker discussed his right of appeal; that she explained her opinion that there was no basis for such an appeal; that Parker indicated that he understood her explanation; and that Parker never asked her to file a notice of appeal.

On December 2, 2002, Parker filed a *pro se* notice of appeal. On December 20, 2002, the First Circuit issued an order to show cause by January 3, 2003, why his appeal should not be dismissed as untimely. On January 10, 2003, the First Circuit dismissed Parker's untimely appeal.

On January 22, 2003, Parker filed an application for leave to file a second or successive § 2255 petition in the First Circuit. Parker's petition cited two grounds for vacating his conviction or sentence: First, Parker asserted that the prior convictions used to enhance his sentence were obtained unconstitutionally by the state, because he is actually innocent of the crimes for which he was convicted. Second, Parker claimed that his counsel was ineffective for failing to enter a direct

appeal on the grounds of "indictment defect," "lack of jurisdiction by the government," and "other issue [sic]."

On February 4, 2003, the First Circuit entered a judgment advising Parker that, as far as they could tell, he had "not yet filed a first § 2255 petition." The Court then transferred Parker's petition to the District Court with directions that it be docketed as a § 2255 petition, with permission that it be transferred back to them if it turned out that Parker had filed a previous petition.

On February 28, 2005, Parker filed a "Motion for Authorization for Assistance of Counsel on Motion Under 28 U.S.C. § 2255." This motion first alerted the district court to the First Circuit's judgment issued two years earlier. Indeed, no pleading of Parker's had been transferred and/or docketed by the district court as a § 2255 petition.

On March 22, 2005, in a memorandum and order, this Court (1) denied Parker's request for counsel; (2) directed the clerk to send a blank form for filing of a motion to set aside, vacate or correct sentence pursuant to § 2255; (3) directed Parker to complete the § 2255 form and file it with this Court no later than May 1, 2005; (4) directed the clerk to deem the newly filed § 2255 form as an amended petition under § 2255, and to deem the filing of the § 2255 motion as having been filed, *nunc pro tunc*, on February 6, 2003 (the date of the First Circuit's Order for

transfer and docketing by the district court), for the purposes of determining any applicable limitation period; and (5) directed the clerk to assign a civil action number to Parker's § 2255 petition.[2]

On March 29, 2005, the government filed a motion to reconsider the Court's March 22, 2005, Memorandum and Order, arguing that Parker should be limited to the grounds raised in his 2003 application to the First Circuit, and not be allowed to add new grounds for challenging his conviction in a newly drafted § 2255 petition. On April 21, 2005, you denied the government's motion for reconsideration "without prejudice to the government's ability to raise the statute of limitations as to any new claims not previously raised in Parker's initial application to the First Circuit."

**B.   Parker's Claims**

On April 25, 2005, Parker filed his new § 2255 petition and supporting memorandum, raising three grounds for setting aside his sentence: (1) his status as a career offender was adjudicated in violation of Shepard v. United States, 125 S.Ct. 1254 (2005), because the Court considered an underlying police report in concluding that two of his prior convictions (for assault and battery, and breaking and entering) were crimes of violence; (2)

---

[2] Until then, all pleadings were being filed under Parker's underlying criminal case number.

he qualified for a downward departure pursuant to U.S.S.G. § 5K2.13 for diminished capacity on the basis of court-order psychiatric reports describing him as "hyper," "paranoid," and "Schizophrenic;" (3) the government engaged in prosecutorial misconduct when it mentioned Count 67 of the indictment during sentencing, even though Parker pled guilty to only Count 54; and (4) ineffective assistance of both counsel during his plea agreement, and counsel during his sentencing.

On May 2, 2005, Parker filed a request "to be resentenced in accordance with the guideline regime," in which he made the additional argument that his sentence, which was issued under a mandatory sentencing regime, should be revisited in light of <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).  Specifically, Parker argues that, post-<u>Booker</u>, he would not have been sentenced as a career offender, and the Court would likely have departed from the applicable GSR.  For support, Parker paraphrases the Court's statements during one of his sentencing hearings that "she would like to depart, but did not believe the guidline [sic] permited [sic] it in circumstances such as this."

The government argues that Parker's § 2255 motion should be denied in full because each of his grounds for relief is without merit and/or time-barred.  I agree with the government; Parker's motion to set aside, vacate or correct his sentence is **DENIED** and this case **DISMISSED.**

**C.   Analysis**

**First**, Parker argues that the Court unlawfully considered an underlying police report in adjudicating him a career offender, in violation of Shepard v. United States, 125 S.Ct. 1254 (2005).

However, Parker's plea agreement, dated June 4, 1999, states:

> The parties agree to take the position that the Defendant qualifies for sentencing as a career offender pursuant to U.S.S.G. 4B1.1 and, therefore, that the Defendant's Base Offense Level is 32.  In exchange for the concessions made by the U.S. Attorney in this agreement, the Defendant also agrees that he will not challenge the validity of his career offender status in this case, either on direct appeal or collaterally . . .

Further, to the extent that Parker is making the argument that Shepard should apply retroactively to his sentence, that argument is unavailing.  See, e.g., Olivas-Gutierrez v. United States, 2005 WL 1241871 (W.D. Tex. 2005); United States v. Olusajo, 2005 WL 1124099(E.D. Pa. 2005).  Indeed, in Cirilo-Munoz v. United States, 404 F.3d 527, 532-33 (1st Cir. 2005), the First Circuit, while finding that Booker does not apply retroactively, suggests that Shepard also should not be given retroactive effect, since Apprendi and its progeny have not been applied retroactively.

Even if the Court had not relied on police reports in determining the nature of *this* specific prior predicate, Parker had many more predicate prior convictions upon which the Court

could have relied in confirming Parker's career offender status without looking beyond the charging documents.  Indeed, only two prior felony convictions of either a crime of violence or a controlled substance offense qualify a defendant for career offender status;  Parker had *seven* prior convictions that could have served as predicate prior felonies.

**Second**, Parker argues that the Court erroneously denied him a downward departure for "significantly reduced mental capacity." U.S.S.G. § 5K2.13.  Under this section, reduced mental capacity means that the defendant has a significantly impaired ability to understand the wrongfulness of his conduct, to exercise the power of reason, or to control his behavior.  In <u>United States v. Lauzon</u>, 938 F.2d 326, 331 (1st Cir. 1991), the First Circuit found that downward departures pursuant to § 5k2.13 are appropriate where the defendant's significantly reduced mental capacity "contributed to *some* extent to the commission of the offense" (emphasis in the original); diminished mental capacity need not be the "'but-for' or 'sole' cause of the offense." <u>Id.</u>

The psychiatric report that was prepared for the Court in 2001  pursuant to 18 U.S.C. § 3552(b) revealed that Parker probably suffers from organic brain damage stemming from an injury in 1988; that his impulse control, insight and judgment are poor; that he suffers from cognitive dysfunction, psychosis and emotional difficulties like anxiety and depression; that he

is a substance abuser; and that he has limited intellectual capacity and learning difficulties. His prognosis for improving his emotional, social and vocational adjustment was "quite guarded." Notably, Parker's first conviction for a violent crime occurred after he suffered the brain injury.

Plainly, I understood the extent of Parker's psychiatric issues and the fact that U.S.S.G. § 5k2.13 was available as a grounds for departure. I concluded – and lamented – that First Circuit law precluded the application of U.S.S.G. § 5k2.13 to the case at bar.

**Third**, Parker argues that the government engaged in "prosecutorial misconduct" when it mentioned Count 67 of the indictment during sentencing, even though Parker pled guilty to only Count 54. This is a misunderstanding: upon Parker's objection during sentencing to his status as a career offender, the government mentioned Count 67 to make the Court aware that Parker had already fortuitously benefitted from an exceptionally favorable plea agreement to the extent that he was able to plea to a count charging him with the sale of 5 grams of crack-cocaine, rather than the count charging him with the sale of 5.7 grams of crack-cocaine. The government's system in the Castlegate case was to allow defendants who were career offenders, like Parker, to plead to the single substantive distribution count involving the largest single quantity of crack

cocaine which they had sold to a cooperating witness during the course of the investigation. The government overlooked Count 67 (5.7 grams) when drafting Parker's plea agreement, which allowed him to plead to Count 54 (5 grams). As a result, Parker's applicable GSR was 155-188 months rather than 188-235 months.

**Fourth**, Parker argues that his counsel during both his plea and sentencing were ineffective in violation of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Attorney John Cuhna represented Parker during the plea stage of his prosecution. Parker contends that Attorney Cuhna failed to challenge his classification as a career offender. However, as discussed above, Attorney Cuhna garnered a plea agreement in which Parker agreed not to challenge his status as a career offender. Furthermore, the government's reply to Parker's Supplemental Sentencing Memorandum indicates that Parker did challenge a sentencing enhancement on the basis of career offender status.[3]

Attorney Julianne Balliro was Parker's counsel at sentencing. Parker argues that attorney Balliro failed heed to his request that she file a direct appeal "on indictment defect [sic], and lack of jurisdiction by the government and other issue

---

[3] Only the government's reply is available on the docket as document #1692 [98-cr-10185]. One of the government's reply arguments is clearly responding to a defense challenge to Parker's career offender status, or at least to a sentencing enhancement on the basis of that status. It appears that the government is responding to document #1689-1, which does not appear on Parker's criminal docket.

[sic]."  Parker does not explain the indictment and jurisdictional defects that might support an appeal.  In any event, Attorney Balliro submitted an affidavit stating that she discussed with Parker the lack of basis for filing an appeal.  Indeed, in a letter written to the Court months after Parker's sentencing, he made no mention of an appeal.  Balliro Affidavit, exhibit 2.  And Parker did not file a notice of appeal until nearly ten months after the deadline for a timely appeal had expired.[4]

**Fifth**, and finally, Parker argues that his sentence, which was issued under a mandatory sentencing regime, should be revisited in light of Booker.  Specifically, Parker argues that, post-Booker, he would not have been sentenced as a career offender, and the Court would likely have departed from the applicable GSR.  For support, Parker paraphrases the Court's statements during one of his sentencing hearings that "she would like to depart, but did not believe the guidline [sic] permited [sic] it in circumstances such as this."

Parker is correct; the Court had serious reservations about his sentence.  The problem is that the First Circuit has concluded that Booker, which could have given the Court more sentencing options, does not apply retroactively.  Cirilo-Munoz,

---

[4] This situation is not like that in Bonneau v. United States, 961 F.2d 17, 23 (1st Cir. 1992) (holding that defendant who lost his right to appeal through dereliction of his counsel was entitled to a new appeal).

-11-

404 F.3d at 533; see also United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005) ("This court has held that petitions under 28 U.S.C. § 2255 are unavailable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive").

Accordingly, Parker's § 2255 motion is **DENIED** and this action is **DISMISSED**.

**SO ORDERED.**

**Date:   October 31, 2005**          **/s/NANCY GERTNER, U.S.D.J.**